Case Numbers 24-2764 and 24-2767 Good morning, Your Honors. Mr. Wilkinson Richard D. Wilkinson for the Appellant and Appellee, Polito Associates. May it please the Court, I'd like to point out that I've requested three minutes for rebuttal to address the cross-appeal. And before I begin, I'd like to correct one mistake that was in that I noticed yesterday in preparing in our response and reply brief where I referred to the two persons who transferred their interests in the debtor and the borrower as guarantors, and they were not guarantors. They were beneficial ownership interest holders, not guarantors. It doesn't change the argument. They're referred to correctly elsewhere, but I just wanted to point that error out so that the Court was not under a misimpression. So with that, I'd like to start by addressing the main prejudgment interest issue in our appeal. And this is an enormously important issue because it really is a $9 million issue. At the 9.5 percent contract rate, the total prejudgment interest would be $13,140,000. And the trial court calculated the interest at approximately $4 million at what it considered the court rule rate of 1.5 percent, which in itself is erroneous and is an issue that I'll address next. That calculation is at page 10 of our initial brief. So I acknowledge that we first have to get past the collateral estoppel issue in order to get to the 9.5 issue under the merger doctrine. However, I think that we should clear that hurdle easily because there is no evidence in this matter that the issue was ever actually litigated at all, no less fully and fairly litigated. All the only evidence that the guarantors presented to the district court was that the bank submitted a proposed order that had the 9.5 contract rate in the form of order and that the order that came back from the clerk said interest at the lawful rate instead. The motion was unopposed. There was no evidence that there was a hearing, either live or remote. I think you can take judicial notice of the fact that this all occurred while COVID was going, we were in the thick of the pandemic, and there was an electronic signature on the order. However, there was not the slightest bit of evidence that there was any actual consideration or opportunity for either side to address the board about what that should be. Those are different things. I mean, the question is whether there was a full and fair opportunity, right? Right, and I respectfully submit that there was no opportunity because there was no hearing of any kind. All we know is that a motion, an unopposed motion went in and an order came out. There was no evidence of an opportunity at all. The second prong of the doctrine says actually litigated. Now, understand, I am not saying that the issue has to be litigated to the hilt or litigated to the utmost in order for collateral estoppel to apply, but there has to be something, and I respectfully submit that here there is no evidence of any opportunity, keyword opportunity, to address that issue. And once we get past collateral estoppel, the road to the finish line is clear because under a well-recognized exception to the merger doctrine, which I don't think the guarantors even contest, the contract rate would still apply if the loan documents made it clear that the contract rate should apply post-foreclosure judgment. And here, that is absolutely the case in Section 10 of the Mortgage Note and Section 17 of the fourth and, I think, final modification, which states clearly that the interest of the contract rate shall continue until the debt is paid in full. And beyond that, that's all at pages 11 and 12 of our initial brief, Your Honors. And beyond that, there's no evidence that the Court actually engaged in the appropriate equitable analysis to determine whether it should be the one point, the lawful interest rate or the contract rate. And at pages 14 through 17 of our initial brief, we lay out how that analysis should play out. But beyond that, at the very least, there was a clear error. The Court just misread the rule. The lawful rate, if that were to apply, wasn't even 1.5 percent. It was 3.5 percent. And all you have to do is read Rule 442.11 of the New Jersey court rules to see that. 1.5 only applies basically to, like, small claims court cases. And this certainly is not a small claims court case. There's millions of dollars at stake. And the guarantors don't deny that. They just said, too bad, because we're raising it for the first time here on appeal. But there was really no opportunity, again using that word opportunity, to address that at the trial court level, because the only time the Court ever did an interest calculation or come out with the statement that the interest rate, the lawful rate, was 1.5 percent was in her final opinion. When the nine-point, when the interest rate issue was argued pre-trial, the only thing that happened was that the district court said, it's not the contract rate, it's the court rule rate. Nobody ever talked about what the appropriate court rule rate was. And then there was a final judgment. District court divested the jurisdiction at that point. Only thing I can do is bring it up to this Court to remedy the wrong. Well, that's not quite right. You could have sought reconsideration, telling the district court it had made an error of law, right? I don't see it that way, because I think that at that point, the Court, the case was done. There was a final judgment as to all parties and all issues at the trial court level. And I suppose we could have tried to make a motion of reconsideration. But there's every reason why it would be appropriate to be addressed here, because there is case law to support the view that it can be corrected here if it's necessary to avoid a manifest injustice or it's a question purely of law with no additional fact-finding necessary. And that is certainly the case here. We're not talking about additional fact-finding. We're talking about doing the math at a different percentage point. And the manifest injustice of the matter is clear from the math, because just looking at the 155-day period for which she calculated interest at 1.5 percent, the difference between 3.5 and 1.5 for that 155-day period is $308,160, a significant number, because the per diem would go from $1,491, which the Court used, up to $3,479 per day. And that is magnified enormously thereafter. By the fact that she instructed the clerk of the Court to calculate prejudgment interest at the lawful rate from the date of the sheriff's sale in June of 2021 up through the date of her final judgment on September 20, 2024. And that's 1,196 days. So if you do the math on that, the number grows exponentially. So that, I think, covers both of the interest issues. It should be the 9.5 contract rate, because collateral estoppel should not apply. And the documents make it clear that the merger doctrine exception applies here. But even if you disagree with me, the Court simply got it wrong on the 1.5 versus the 3.5, and that makes a difference of hundreds of thousands of dollars, and there's no additional fact finding. All you've got to do is do the math and correct the manifest injustice. Thank you, Counsel. You've reserved three minutes for rebuttal. Thank you. Mr. Pincus. Good morning, Your Honors. May it please the Court. I'm Andrew Pincus. I represent the borrower and the guarantors in this appeal and cross appeal. Let me go right into the interest issue, which is what my adversary spent a lot of time on. The fact remains, you can't get around, there's a State Court foreclosure judgment here that resolved this issue. It holds that interest applies at the legal rate. The lower court applied collateral estoppel properly. The only issue raised by my adversary seems to be whether or not the second element was satisfied, which was, was the matter actually litigated? Some Federal Courts characterized that second element as having a full and fair opportunity to litigate. The New Jersey State Court defines it as having actually been litigated. But here's what actually been litigated means, according to the State of New Jersey, which adopts the restatement of judgments when an issue is properly raised by the pleadings or otherwise and is submitted for determination and is determined. That's it. There is no requirement that it be opposed. There is no requirement that there be a hearing or opposition. None of that stuff matters, and that's exactly what happened here. The plaintiff, the lender, submitted an affidavit with the interest rate it wanted. It submitted a proposed judgment with the interest rate it wanted, and the State court crossed it out and put lawful interest in. The matter's been fully and fairly litigated. Whether the Court misapplied the rule and applied a 1.5 interest versus 3.5 interest rate, it's been forfeited, Your Honor. It was the State Court's fault. You don't dispute that the lawful rate, though, is 1.5, not 3.5, or the other way around? I'm sorry. What was the question? You don't dispute that the lawful rate, New Jersey lawful rate, is 1.5, not 3.5? The way the rule reads is that 1.5 is normally applied for special civil part matters, which is under 20,000, and 3.5 is applied for above that. However, there is some discretion built into the rule, the way the rule reads at the outset, except as otherwise ordered by the Court or provided by law. So there is some flexibility in the Court's hands as to whether it wants to apply whatever interest rate it feels is appropriate here. Well, we don't have any reason to think that the district court even considered that, right? It thought it was applying the New Jersey judgment. Well, the district court just deferred to the New Jersey judgment. Which talks about it being applied according to the rule of law. Right. Well, the district judge just applied the collateral estoppel and said the state court judgment holds. But the state court didn't say anything about lawful interest. No, it said lawful interest. So why don't we have a clear error of law here? Or at least an uncertainty as to whether the district court considered this and said, well, 3.5 would normally apply, but in this case, I'm only giving 1.5. There is no evidence in the record that the judge debated it. However, Judge, they are incorrect when they say it was not discussed. There was an unlimiting motion where I raised very clearly the 1.5 interest rate. I also put it in my papers in my unlimiting motion, and they said nothing in response. So there was discussion on the record as to the point. They never raised it. It's been forfeited. It's true that the Court can hear matters that were not raised below. However, there's got to be some excuse as to why they didn't raise it. And that's in a case they cited themselves, the Bogle-Asagi case at 470F, 3rd, 498. But you would agree that, putting the forfeiture argument aside, that the correct rate was not 1.5 percent, it was 3.5. Would you agree to that? I would agree under normal circumstances, if it were not for the judge's discretion, the 1.5 rate would not be appropriate. Well, when you raised this issue with the Court, you didn't tell the Court that you were asking it to use its discretion to depart from the 3.5 percent rate. You were representing to the Court, and please correct me if I'm wrong, that 1.5 percent was the applicable rate. Did I misunderstand? No, you're correct, Your Honor. At the time, I believed that 1.5 was appropriate. Let me move on to a second issue raised on the appeal, which is the dis- Sorry to take you back to the collateral sample, but I just want to make sure I understand the argument. So there has to be an opportunity to have actually litigated. You say New Jersey, it's actual litigation. You submitted the affidavit with the proposed rate, and the Court decided or calculated the interest using that rate. Yeah, I didn't submit. The lender submitted. The lender submitted an affidavit with their 9.5 percent contract rate and a proposed form of judgment, and the judge crossed it out and said no lawful rate under New  Jersey. So what, in your view, is the opportunity? When was there the opportunity? When they submitted their papers. They had an opportunity to argue it, and they did, in fact, argue it. They argued the 9.5 percent contract rate should apply in their papers. So they had a full opportunity to do it. They actually did do it. They submitted it, and it was determined against them. If I may move on quickly to the disallowance of attorneys' fees issue, the lower court denied their application for attorneys' fees, holding that the attorneys' fees issue was properly part of their damage claim and should have been introduced at trial. The Court also gave them multiple opportunities to submit their time records, and they failed to do it, and the judge ultimately denied their application. The correct standard to apply is abuse of discretion. That's under the Town of Poughkeepsie case. Rule 54D controls this issue. What that rule says is that normally you bring an application on for attorneys' fees by motion at the end of the case unless the attorneys' fees is a component of the damage claim. The New Jersey Supreme Court has ruled on this issue. The Cohen case is very clear that when there is a provision in a contract that awards attorneys' fees, it's part of the contract claim. It's part of their case in chief and has to be submitted at trial. And the Jennings case has said if you fail to do that, you're out of luck. How do you know what the attorneys' fees are when the trial hasn't been completed? Well, you don't know the complete attorneys' fees, but they did have a liquidated amount that they sought in their application, Judge. They had a liquidated amount that they sought in their papers, was about $167,000, if I recall correctly. So there was an amount that had accrued up until then. And this is not a prevailing party provision, Judge. A lot of these attorneys' fees provisions are drafted in such that the winner gets to ask for attorneys' fees. And in those cases, there is a argument that it's a collateral issue that should be raised at the close of trial. This is not a prevailing party provision. What the attorneys' fee provision says in this case is if the lender has to consult an attorney or go to court or if the borrower fails to comply with the terms of the case, note, the borrower will pay. There's no if you win, you get your money. It's if you have to lift a finger, you get your money. So this is part of their damage claim as a matter of law. The New Jersey Supreme Court has ruled on this issue. And they failed to say that. Do we even have to get into that, whether or not it was part of the damage claim? The district court here, if I understood it correctly, told the party to put in the records of its fees. And whether the district court was going to do it all as one judgment or first decide liability and then decide attorneys' fees, they were pretty much told to put it in. And as I understand it, did not do so. That's correct, Your Honor. And the reason the judge asked them to put it in is because I had made an eliminating motion that said they hadn't done it yet as part of the pretrial information exchange, and it was part of the case. The judge did raise this right at the March 7th hearing, noting that they had failed to submit their time records, she said, and so there will be no evidence as it stands right now for the court to determine attorneys' fees. Because it's not like the court is going to be looking at attorneys' fees after. It's not one of those cases where it's a civil rights case and someone wins, and then the court will evaluate attorneys' fees. It's part of what I have to look at to determine what is owed on the note. That's right in the record at page 2168. So they were on notice pursuant to my eliminating motion that they had to submit their attorneys' records. They objected or didn't object to that directive? Did I object? No, no. Did the plaintiffs? No, they did not object. They said nothing. So at the end of the day, they failed to produce their time records in discovery. They failed to produce it in exchange in connection with the pretrial order. They failed to produce their time records in response to my eliminating motion, even after the court directed them to do so, and they failed to introduce their time records at trial under New Jersey State law, the route of the money. What are entrepreneurial profits? Entrepreneurial profits is a — the way these appraisals — and I'm not an appraiser, Judge, for the record. But the way these appraisals are calculated is that the court looks at the income of the building, multiplies it by a capitalization rate, and that will determine the as-stabilized value of the property. And then what it does to get to an as-is value is it deducts all the expenses that a party would have to expend to reach that as-stabilized value. And one of the expenses that a court can consider is entrepreneurial profit. However, it's only applicable in cases where the property is being developed or redeveloped, and that is not the case here. It consists of what? I'm sorry? That component that you just referred to consists of what? That component, the entrepreneurial profit, it's sort of a theoretical number. It's an expense. It's the idea is that what would any investor need to get out of this property in order to put in the money to develop it? So it's a — different appraisers calculate it in different ways. Some calculate it as a percentage of income or something like that. But it's a theoretical number that investors would want to recover if they develop property. And it's only applicable if property is being developed. It is not applicable for ordinary leasing operations. And that's exactly what these appraisals reviewed here. And that's not contested, by the way. The judge, you know, thoroughly got into this issue with the expert. There was extensive cross-examination. The judge herself examined the expert on this. So there was expert testimony on this point. There's a treatise on this point, and there's also case law on this point, all of which hold that entrepreneurial profit is not properly — properly deducted from as-stabilized value unless the property is actually being developed or redeveloped. It's not applicable for ordinary leasing operations. So she was correct in excluding it here. If I can, Your Honor, I'd like to move on for the issue — to the issues in my direct appeal. In my direct appeal, I am challenging a decision by the lower court on summary judgment, which essentially ruled that the limitation on the guarantor's liability on a non-recourse carve-out guarantee had been triggered. I argue it should not have been triggered for two distinct reasons. First, the absurdity exception. And two, the trigger was subject to notice and an opportunity to cure. Let me talk about the absurdity exception first. Every rule of contract construction across the country, every State, provides that the court should apply the clear, unambiguous language of a contract unless it would lead to a absurd result. And here, what you have is a commercially absurd — egregiously commercially absurd result. What happened here is two minority interest holders in the borrower. These were not managers, and these were not guarantors. They held less — collectively, less than 8 percent interest in the entire business. Let me stop you there. I mean, the language says any. It does say any. Any interest. And so what would you have us interpret any to mean? Well, any does encompass any. But there has to be some constraints on commercial reason. Any 10 percent? Any majority? You have to substitute with something. You can't just say it's absurd to say any. The result is absurd in this case. I agree with you. Any could mean any. If that 1 percent was a manager or if that 1 percent transition affected the collateral, that might be a different story. But here, none of those concerns were implicated. I guess my problem with your argument is that you have — if you take out any, you have to add in something else, and you haven't given us something else. Yeah. And I — Your Honor, that's well taken. The percentage isn't really what's relevant here. What's relevant here is that the transfers here did not impact either the identity of the borrower or impair the collateral in any way whatsoever. The problem I have here is that, you know, that these — this is — this issue is part of a transaction that was negotiated by very sophisticated counsel, sophisticated counsel, experienced counsel at arm's length. So what would you have us do? Well, Judge, I'd have you look at the result here, which was the whole guarantor is liable. The result, let's just say hypothetically, is — is troubling. Well, the absurdity section does have you look at the results. So I don't think it's completely irrelevant to look at what happened here at the end of the day. What happened here was you had guarantor is liable for potentially tens of million dollars when two other individuals transferred their interest to trusts, but didn't change their voting rights, didn't change the mannequin structure, didn't change the — Transferred it back. And then they transferred it back. Yes. Judge, even if you don't like the absurdity exception, the contracts at issue here provide for notice and an opportunity to cure, which was — there was no notice ever given. And there was, in fact, a cure here. The mortgage says, the failure of a mortgagor to duly observe or fulfill any covenant, condition, or agreement other than monetary payments contained in this mortgage or the note or any of the loan documents and such default shall have remained uncured for a period of 30 days after notification. That would be a breach. So there's 30 days after notification. The notice provision of the note requires certified mail return receipt requested or overnight delivery. It's uncontested. There was no notice of a breach of this anti-alienation clause. And even with that lack of notice, these two transferees transferred their property interest back. There was no prejudice at all. There was an absolute cure. My second argument is that the clause should not have been deemed violated because there was a cure. And the cure should not have been deemed violated by the court because there was a cure. I thought it was because there was no notice. Well, there was no notice. The cure was within how many days? The notice would have permitted us 30 days. Right, but you don't know when to measure that. Exactly. So how long did it take them to cure? We first learned about their position when they filed their complaint on April 17th. Which is how long after? We cured within about 40 days after the complaint. Not after the complaint. How long after what they're claiming is the breach? Oh, there is no. It's quite a long time. I don't know when the initial transfer occurred. It's not in the record, Judge. I'm not sure it's not. I just don't have it handy. But in any event, we're talking months? I just don't. I would be guessing, Judge. I don't know when the initial transfer occurred. But when we learned that they were using it to claim a violation of the interest. Was this whole argument made to the district court? And what did the district court say about we didn't get notice, that you didn't get notice? The judge did not. I raised the issue of cure. The judge did not address it in her decision. I see. You raised the notice issue. I'm sorry? Did you also, when you said you raised the cure issue, but did you also? I believe I'd have to go back and look at my summary judgment papers, Judge. But I believe I did argue the notice issue. I'd have to go back and check the record, though. I see I'm out of time. Thank you, Your Honor. Let me start with the commercial absurdity thing. By the way, that's incorrect. It is in the record that the transfers of those interests occurred in February of 2016. It was undiscovered because it was undisclosed because they never asked for our consent until we discovered it in the middle of the litigation and asserted the claim that the limitation on the guarantee was laid. That was in April of 2020. So for a period of four and a half years, the guarantors basically concealed from us that they were in default, from the bank, our predecessor, that they were in default. So under the circumstances that are sort of unusual here, you have to look at the time that the bank asserted the claim as basically that's when we were given a notice that they were in default. And they didn't cure that default by unwinding those two transfers within 30 days, like the loan document said. They did it in 45 days. So they concealed it for four and a half years. We asserted it in April 2020.  The guarantor's aggregate percentage was something like what, 7 percent? I think it was closer to 10, but it was not a major interest. However, I'm sorry, Judge, I didn't mean to interrupt your statement. So following up on your counsel's argument, the benefit that you're seeking to enforce as a consequence of what they do seems to me to be – that seems to me, I don't know if you have it in your mind, but is arguably egregious in comparison to the risk, which seems to me to be nonexistent, and the burden on these guarantors. Well, you have to – to address what Judge Park said earlier. It's like the contract says, any. Like, the real – there is no commercial absurdity doctrine in New Jersey. What the guarantors are relying on is like some offhand language in two matrimonial cases. Okay? That's for starters. The fundamental principle of contract construction that we should really be talking about here is the fact that courts cannot and do not write better contracts for the parties than they made for themselves. And as you put it – look how many different ways you could have written this. Suppose it was – the interesting question was 1% and the default would expose the 1% holders to $100 million in – You could have written – you could have written a contract. They would have to – in your theory, they would have to eat that. Yes. You could have written a contract that said, if the guarantors transfer an interest in their – in their ownership – an ownership interest. Or you could have written a provision that said, if their managers – or you could have written a provision that said, if they hold an interest that's more than X percent. It gets back to what Judge Park said. Like, if it's not going to be any, then what is it going to be? And you cannot write a better contract for the parties than the sophisticated parties negotiated for themselves. After all, listen, we're a successor to the bank. But the bank could have easily, back in the day when these documents were first written, said, well, because I know that the ownership group is composed in this particular way, that makes me willing to give the guarantors a reduction if something occurs. If you go back, if you relate it back to that time, they could have decided something entirely different if they had – if they – like, what I'm saying is the bank, probably back at the time, evaluated and relied on the fact that the ownership group was composed as it was. And only because of that did they agree to an out or a reduction for the guarantors in the event that certain circumstances occurred. So you really – I guess it's really not a no-harm, no-foul situation here. It's not right to view it that way. And as I said, there certainly are numerous ways that this – these documents could have been written in a manner that would accomplish what the guarantors are seeking to have this court do for them. But you can't rewrite the contract and give them a better one than they made for themselves. Now, I want to just briefly address Judge Parker's – Do the guarantors have a right as against the transferring interest holders for transferring in violation of the contract since they're – now that triggered their guarantee and they were liable for all of this? Is that – is that provided for at all? They may, but offhand, Your Honor, I do not know the answer to that question. That's a good question, but I do not know the answer. I just want to address the entrepreneurial profit issue for a second. So the problem here is that everybody agrees that subtracting entrepreneurial profit is appropriate when the property is being redeveloped as opposed to just being run the way it was before. So it's my understanding that you couldn't get Hermes or whoever it was to re-up their lease. Ralph, Your Honor. Ralph, same. For me, it's – and you were – it was contemplated that this building would become a hotel. It was always going to be redeveloped as something other than what it was. That's the point. It was always either going to be redeveloped as a hotel or as corporate suites or as something, but it was no longer viable as a first-class commercial office space at the time. And that never really happened. Is that correct? We are redeveloping it. Yeah. It's being redeveloped as a hotel. As we speak. Yeah, as we speak. So on the entrepreneurial profit point, everybody agrees. Both experts, the Bible of – the Bible appraisal and even the guarantor's own brief says deduct entrepreneurial profit if the property is being redeveloped. If it's just going to be the same old, same old, no. But if it's going to be something different, yes. All the evidence was that it was going to be redeveloped from the beginning. So I think that that's a clear error. And I just want to say something very briefly about the attorney's fee issue. First of all, in response to the question that you, Judge Parker, asked, you have to view this as a prevailing party clause because paragraph 15 of the note talks about if we have to go to court and get a judgment. Well, if you have to go to court and get a judgment, doesn't that mean that you're the prevailing party? Yeah, but the wrinkle here is that the court directed you to – directed that these documents, this submission, be made and imposed a deadline, which was, and correct me if I'm wrong, ignored. The problem is, respectfully, I submit that that direction, yes, she said do that. But that direction was wrong because – I mean, look, assume that you're correct about that. But you can't then just ignore it and ask us to relieve you from the consequences of doing that. Just go back, Judge. You know, we're going to have months and months and months and years of litigation that we don't know. So it's a tremendous waste of time to put in a fee application midstream, Judge. Even if you were correct about that, that would only apply – we were talking at that time. When she said that, we were talking about the $75,000 worth of attorney's fees that had been expended at the foreclosure stage of the case. We're not talking about all the attorney's fees from the trial at the district court level and the trial here. The judge gave you an instruction and a deadline. And how do you – what's your argument to us about relieving you of the consequences of what she told you to do? Even if you were right about that, we would be talking about $75,000. And what about all the attorney's fees that have been expended since? Why don't we have the right to put in a fee application? And wouldn't it be – if we put all of those attorney's fees for the $75,000 into evidence during the trial, wouldn't we be having all kinds of attorney-client privilege breach situations all over the place? I think that the whole premise is wrong. This Jennings case from 1966 that supposedly stands for the proposition that if it's an element of damages, it's got to be presented at the trial, all depended on an appellate division decision in a case called Cohen from 1965. But when Cohen went up to the New Jersey Supreme Court, the decision of the Supreme Court was, and in the future, we'll do this attorney's fees stuff by way of post-trial application. Well, very often trials, of course, are to a jury. And I understand why you might have an argument that you shouldn't have to present your records before the matter is a fee. The fee award is before the court. But here where it was a bench trial and the judge told you to submit the fees, I don't understand how you just ignore that. Am I correct that you didn't object? You didn't say it's premature. You didn't say it's going to require us to disclose attorney-client privilege. You just ignored it. Well, it wasn't us. It was our predecessor. I understand that, and I apologize if I suggested otherwise. I mean, Your Honor, even if that were all true, it would only apply to the $75,000 worth of fees from the foreclosure stage of the case. What about everything else? Well, that's the only one you've got before us is the district court denial, right? Of any attorney's fees. Why can't we make a fee application for everything that's been incurred at the district court level and is still being incurred as I stand before you now? That's the way these things should be handled. This isn't like an attorney suing his client for fees from a former representation where you've got to put that evidence in, or it's not like in the context of, say, a legal malpractice case where the attorney's fees that the client paid for getting bad representation are part of the damage claim. This isn't that. If you're saying to us, look, the $75,000 is one thing, and that whatever the district court did or didn't do correctly on that, that's one thing, but you should be allowed to bring seat fees forward. I mean, you haven't sought fees forward, have you? Because the court told us we couldn't. What did the court say that suggested you couldn't do it for fees incurred after that judgment? That's the way I read the opinion, that attorney's fees were out because they were not presented during the course of the trial. Well, I mean, the district court presumably would know that it could only ask you for your fee records up to the date it gave its judgment. You're saying you're entitled to fees post-judgment, and I'm asking you, is that your argument? No, actually, I'm— Fees incurred post-judgment that you're not allowed to bring? I'm saying something a little bit different than that. Okay, help me out. Because the $75,000 in fees that she said, you better bring that and put your proofs in at trial, all applied to the foreclosure stage. I'll just say it, the foreclosure stage of the case. It didn't have anything to do with all of the fees expended at the district court level or, obviously, at the appellate level. So it's not that I'm saying we should have the right to put a fee application in post-judgment. I'm saying even if you buy everything about not putting in the proofs on the $75,000, everything thereafter, and that goes way further back than post-judgment. That goes back, basically, to almost all of the proceedings at the district court level. I think that— Okay, counsel. Thank you. I appreciate your time. Thank you very much for your consideration.  Thank you. Somewhat complicated case. Really? You think so, huh? The next argument will be in Niemus v. Bondi, case number 25-304. Okay. May it please the Court, my name is Matthew Guadagno, and I represent the petitioner, Sandy Niemus. This case is about whether Mr. Niemus' conviction for conspiracy to violate 18 U.S.C. section 1546C, 1546A, is a crime involving moral turpitude. Specifically, it involves the fourth paragraph of that statute, which is broken up into two parts or clauses. The first part involves knowingly making a false statement of material fact, which is definitely a crime involving moral turpitude. My argument focuses on the second clause, which involves knowingly presenting a document that lacks any reasonable basis in fact or law. This is not a crime involving moral turpitude because it doesn't involve any deceit. This is the second time this matter is before the Court. Previously, the Court remanded this matter to the Board because the Board didn't properly follow the categorical approach. Once again, the Board has failed to properly apply the categorical approach. This time, the Board failed to consider the minimum conduct necessary to violate the statute. Specifically, what the Board did was they just found examples of violating the statute that would be a crime involving moral turpitude. They didn't look to the minimum conduct. Are there examples that would not be a crime involving moral turpitude? So then I understand where we are here. The two parts of the statute that you identified, the facts of the case are such that your client violated the first part, right? Yeah. Yes. Okay. But you're arguing that the two sections are not divisible, and therefore we have to consider the minimum. Under the categorical approach, we have to consider the minimum for the second part of the clause you read, right? Correct. Okay. So we're now into this hypothetical that's not, that's totally divorced from the facts of this case, but nevertheless fits into the categorical analysis. Yeah. And no different than what was asked of this Court in Harbin v. Sessions, Jack v. Barr, or U.S. v. Minter. Continuing on, the examples that the Board used was not disclosing conviction on an application for adjustment of status. This is, this is an omission. It's fraud. I've, I've, it occurred to me as I was prepping for oral argument over the years, I've had many clients who left out a conviction on an application for adjustment of status. They wind up being placed in removal proceedings, and the ground of immobility they're charged with is fraud. So leaving out a conviction is, on an application for adjustment of status, is considered fraud. And a statute does require that it be a knowing omission. Knowing. This can't be negligence or inadvertence. It has to be a knowing omission. And given that it's being submitted to an agency, is there implicit in such a knowing omission an intent to deceive? Well, I, I, my, my position is that the knowingly presenting a document that lacks any reasonable basis in law or fact doesn't, doesn't necessarily include omissions. Omissions should fall under the first clause. Well, what would fall within the second part if you, if you don't think it covers omissions? Help me out on that. Okay. They, my, my brief provided two examples. One is filing an affirmative application for asylum with USCIS that, that has, has no basis of law, but it's true. Like, something like, there's a lot of crime in my country, which wouldn't be a basis for asylum because it's, it's, it's not persecution on a matter of, of an enumerated ground. And the purpose of filing that is to get the individual into removal proceedings to, to seek non, non-permanent resident cancellation of removal because there's no means of affirmatively filing for, for non-permanent resident cancellation of removal. That was the argument that was presented to the board and was ignored. In my brief, I, I. The government says that that is, I guess, not in good faith at the least and, and, and deceitful because it's, it's purporting to be, by, by filing something and seeking a type of relief, you're purporting to do it in good faith. And it's clearly not. It's for strategic reasons, to get some strategic benefit, right? Yeah. So in, in your reply brief, I, I think you acknowledged that it's dishonest in a colloquial sense but not legally fraudulent or deceitful. What's the difference? I mean, it seems like awful fine parsing there between dishonest, colloquially dishonest and deceitful. It's, it's not, there's, the, the paperwork that's filed, everything is true. Okay. It's just, it's just, there's, it's, it's what, what the, the statute says, presenting a document that lacks any reasonable basis in law or fact. Because presenting a document that lacks any reasonable basis in law and fact does not require deceit. And, and so, and so. But it requires it to have been knowing. So you know. Yes, okay. That it fails to contain a reasonable basis in law or fact. Yes. And yet you're submitting it. And so what's the purpose in submitting it? That, that there, there is, there is a benefit to the client or, or hoping that, that no one's going to make an issue of it. And it, it, it won't be caught. Because, because you are representing that you have a basis in fact. You know you don't. Yeah. And yet you submit it anyway. Isn't the, isn't the goal to deceive the, the officer into thinking that you do have one? That you hope he'll, he'll be so busy that he does, that he ignores it? With, with, with regard to the affirmative asylum, I mean, the, the goal in generally those cases is, is to, to get the case referred to an immigration judge. A lot of times lawyers who do this, they don't even show up to the interview. So I, I don't think that, that when this is being done, the plan is to get the person asylum. The plan is to get them into, to remove proceedings. Why does that matter? I mean, you're still trying to get a procedural advantage. You know you're not entitled to in this hypothetical. Yes. So why does it matter if the, the, the payoff is asylum or just the, the procedural benefit that you, you wouldn't otherwise get? But there's, there's no actual deceit. We talk about in, in, in the brief. But I just want to get to the part about what you're getting or trying to get. Mm-hmm. Why does it matter what the object is to constitute deceit? It either is or, is deceit or it's not. Whether it's, you know, money or, you know, time or some other procedural benefit. But, but the means being used do not involve deceit. And, and, and basically under matter of Flores, there's, there's two requirements for, for, for a crime involving moral turpitude. Impairment or instructing a government function, which, which there probably is. But the second part is by deceit, graft, trickery or dishonest means. And, and this, this second clause doesn't require deceit, graft, trickery or dishonest means. In my brief, I used an analogy to Mendes v. Barr, which held that misprision of a felony was not a crime involving moral turpitude. And, and the analogy there is not reporting a crime obstructs a government, a government function. However, there's, there's, there isn't necessarily deceit and it's committed knowingly. There's a clause there that the law is creating an obligation on you to report, but you don't report. So you don't do anything. Here, there's affirmative action required, which is that you knowingly submit an application or an affidavit that fails to contain any reasonable basis in law or  So it's, it's an affirmative action to deceive rather than failing to report something. And, and, and There's no, there's no deceit in a failure to report. Whereas here, you're, you are reporting something that you know is not true, that namely that you have a basis for an asylum application or you have a basis for whatever you're, you're reporting. In, in Mendes, there was an argument that, that there should be deceit imputed into the statute. And, and the court rejected that saying that we shouldn't impute deceit into a statute when there's none. If, if there isn't expressed deceit in the statute. But that goes to whether or not the crime, the, the actus reus can only, can only really be committed with that mens rea. I don't think that's the circumstance. Is it in the case you're citing? Yeah. Yeah. Mendes. Mendes. But, but the, the point was in, in Mendes is that we don't, we don't, we look at the elements of the statute. And if deceit is not an element of the statute, it shouldn't be imputed into the statute. Another analogy that was used in the brief was, was money laundering, specifically a case called Jang v. Garland. Money laundering, again, involves an obstruction of a government function. It's committed knowingly, but in Jang, there was no evil intent. Again, here, the, the reasonable, the reasonable, the reasonable basis in law and fact is, is, is, is similar to, to the money laundering statute because there isn't, there isn't an evil intent. Another example that was, was brought out in, in the brief was Federal Rule of Civil Procedure 11, which states that the, the reasonable basis in law and fact standard, and that tells us that that standard generally is not viewed as involving fraud or deceit. You can, you can basically be, be subject to sanctions under Federal Rule of Civil, Civil Procedure 11 without deceit. It's, it's, you can, you can basically take actions that have no reasonable basis in, in, in fact or law. My position is 1546A is not a crime involving moral turpitude because it doesn't involve fraud or deceit. In the event that there were to be any, any question of that, this is an ideal case for the rule of lenity. It's, it's acknowledged by, by the board and the government that, that the statutory history is not clear, and there is no express case law on, on the second clause that, that helps us at all. So this is, this is the type of case where there is a lingering ambiguity, where, where since there's nothing else we can look to, to help us, the, the rule of lenity should and could be, be used. And my, my final closing point is the fourth paragraph of 18 U.S.C. 1546A contains means, not elements, so it's overboard and categorically not a crime involving moral turpitude. ICE withdrew all the other inadmissibility charges against Mr. Niemus, so the only charge against him was the CIMT charge. So if Mr. Niemus is not inadmissible for having been convicted of a crime involving moral turpitude, his removal proceedings should be terminated. Thank you. Can I ask you? Yes. Do you agree that the first clause, the containing a, a document that contains any false statement, do you agree that that does require proof of deceit or, or? Yeah. I mean, it's, it's, it's in there. I mean, knowingly making a false statement of material facts. I, I can't, I can't say it doesn't. Well, then I'm having a little trouble as to why you don't think the two sections are divisible if one does have a deceit or intent to defraud element and the other doesn't. Because, because it's, it's, it's, it's means and not, and not elements. It's, it's not report. But one has a different element. One, one you just said has the element. But it's, it's not, it's, it's, you, you can, you can, you, a conviction, it's, it was pled, if you, if you look to, to the, the indictment, okay, they, they, they listed both, and I always get them confused. They, they, they, they were listed, they were listed together, which indicates, which indicates that, which indicates that, that the statute is, is indivisible, is indivisible. Maybe. Okay. Thank you. Thank you, counsel. I know you've reserved a couple minutes for rebuttal. Thank you on behalf of the government. Good morning. May it please the Court. My name is Craig Newell, and I'm here on behalf of the Attorney General. The object of offense in Mr. Niemus' conspiracy conviction, which is paragraph four of section 1546a, categorically constitutes a crime involving moral turpitude. And the full range of conduct prohibited under that paragraph falls squarely within the matter of Flores CIMT category. Mr. Niemus doesn't dispute that the, the false statement prohibitions fall under that category and are crimes involving moral turpitude. And this remaining provision, the minimum conduct of that provision, the no reasonable basis in fact or law, is likewise a crime involving moral turpitude. Because it is, whether you would like to call inherently deceitful or inherently dishonest, it's, it's one or the other. You are, when you, when a bona fide presenter, applicant, is putting forth an application, that person is asking for the government to consider it, review it, and to provide them the immigration privilege or benefit that's in question, asylum, visa. And the bona fide presenter is doing it, stating for truthful statements and is doing it in good faith. The examples that Mr. Niemus provides are people who are not doing that. They, they are by omitting things or embellishing things or doing things that are not concretely. Let's stick with the hypotheticals. It, well, how about a different situation where, I mean, litigants file meritless motions for the sake of getting more time, say. And it's, it's, it's a loser, but everything in there is, is on it. It's just, it's just a legal loser. And the purpose isn't to win. The purpose is to, to get more time. Let's say in that situation. Is that deceiving the court? It is being, in the context of, of the immigration realm, what you, you are being dishonest. The, the way I, I think the example of the asylum. I guess my, my hypothetical here is just more sort of a general one. If you're filing a motion that's purporting to seek relief that you know you're not going to win, but the goal is to get more time for your client, whatever the reason. Is that deceiving the court because it's not representing that your true motive is to, to get some advantage from time and not to win the actual thing you're, you're arguing for? I think in that example it's different because that is similar to someone just presenting a, a weak argument. There's a difference between a weak argument and something that is utterly baseless. For the purpose of getting some advantage. Sorry. For the purpose of getting an advantage and not to win the weak argument. Correct. But, but what the matter of Flores standard also requires is this impairing of, undermining an important government function. The language from that matter of Flores standard has its roots way back into how Chief Justice Taft described what it means to be a conspiracy to defraud the United States. And it's you, so it, in the context of immigration, what you're doing is you're putting forth something that's baseless. But, but on its, on its, you know, on its face, the adjudicator is thinking that this is something someone sincerely wants. And this person is hoping whether you're, the adjudicator's overworked or, or, you know, or inexperienced, it's going to get passed over and they will, they will get this benefit. But that benefit is to the detriment of government. That rings of a nature of being an inherently fraudulent act. In response to Judge Park's hypothetical, that's deceitful conduct. You're bogging down the court with a meritless motion. I think, and, and when it is so frivolous, I mean courts have standards for frivolous filings and penalties for such. It's not so frivolous. It is, you know, I may be able to work out a deal. I'm, my, my client's not ready to face the music. I'm going to make this motion. It's going to bind, it, there's nothing much to it. We all know that. I'm just going to, I'm not going to perjure myself or rule, committing Rule 11 violation. But the point of this application is to buy time. Violation. I, I, I think with respect to this example, proceedings before court, I, I, I think it's, I think it's, you know, you can describe it either way. And so I think that we have to get back to what the context of this knowing violation is. No, it's hypothetical. I understand, but this hypothetical. We don't look at this knowing violation. We have to use the categorical approach. Correct. All right. Now, I'm troubled by the fact that we've been talking about whether it's implicit in a failure to, in a submission of something that fails to contain any reasonable basis in law or fact, whether deceit is implicit in that, even if it is in 99.9% of submissions, how do we imply an element into a criminal statute? I mean, if Congress wanted proof of an intent to deceive or defraud, it could write that into the statute, and it hasn't. How do we get around that? It's not a case of getting around. It's, it's, we're not implying or asking to add an element. We're looking at the intrinsic nature of the elements here. It's knowingly presenting a required application that has an intended purpose, but you are skirting the truth as to what that purpose is. This is no different than the false statements. The false statements requires a knowingly made false statement. That, that is inherently deceitful. But there's no, there's no intent to deceive as an element that the jury, you know, the jury must establish in that.  You don't think something can fail to be, to contain a reasonable basis in law or fact without being untrue? It's, it's, okay. If someone might submit a basis for asylum or any other relief that they want, and every fact in it is true, but it doesn't support the relief you're looking for. The question...